PLAINTIFF'S EXHIBIT A

EXECUTION COPY

ASSET PURCHASE AGREEMENT

between

KELLER INDUSTRIES, INC.,
as Seller,

and

KUA CORP.
as Buyer,

Dated as of June 6, 1996

Schedule 1.3, other than Contracts that are assignable pursuant to Section 365(f) of the Bankruptcy Code (hereinafter defined) (the "Non-Assignable Contracts"), Seller agrees to use its best efforts as soon as reasonably practicable after the execution and delivery of this Agreement to obtain any consents necessary to convey to Buyer such Non-Assignable Contracts or the benefits thereof to the extent they would otherwise constitute Assets.

1.4. Assumed Liabilities. (a) On the basis of the representations, warranties, covenants and agreements, and subject to the satisfaction (or waiver by Buyer) of the conditions set forth in this Agreement, on the Closing Date, Buyer shall deliver to Seller an undertaking in the form of Exhibit A hereto (the "Assumption Agreement") pursuant to which Buyer shall, on and as of the Closing Date, assume and agree to pay, perform and discharge when due, the following liabilities and obligations of Seller, to the extent incurred exclusively in connection with the Operations; provided, that Seller shall retain the obligation to cure all defaults under unexpired leases and executory contracts assumed by Seller and assigned to Buyer under this Agreement, using assets of the bankruptcy estate for such purpose: (1) Seller's obligations under the leases set forth on Schedule 3.1(e)(iii) and Schedule 3.1(o)(B); (2) Seller's obligations under the Contracts set forth on Schedule 3.1(r), other than (x) letters of credit, which are governed by clause (5), subject to clause (6) of this Section 1.4(a) and Section 1.4(b) and (y) the Insurance Policies, which are governed by clause (7) of this Section 1.4(a) and Section 1.4(b); (3) Seller's obligations under any and all product warranties or any similar obligations relating to the Operations as conducted by the Seller, including, without limitation, all obligations relating to product liability of the Operations; (4) all workers' compensation claims asserted or assertable against Seller which arise exclusively out of or relate exclusively to the Operations; (5) Seller's obligations to reimburse Bank of America Illinois (the "Bank") for draws under the letters of credit issued by the Bank prior to the Petition Date (hereinafter defined) for the account of Seller, but only to the extent that such draws were used by the letter of credit beneficiaries to satisfy unpaid claims (or costs of defense or settlement relating to such claims) which relate to the Operations and are of the types referred to in Clauses (3) and (4) of this Section 1.4(a) (which letters of credit are listed on Exhibit 3.1(r)); (6) all trade accounts payable arising after the Petition Date up to a maximum of $600,000 in the aggregate (the "Accounts Payable") and wages, vacation pay and benefits arising after the Petition Date, in either case which remain unpaid as of the Closing Date and which are not supported by any credit enhancements or guarantees, provided, however, that the Bank's agreement under the Cash Collateral/DIP Financing Order shall not be deemed to constitute a credit enhancement or guarantee in respect of Seller's obligations and (7) Seller's obligations under the Insurance

5

Policies, subject to proviso (B) of Section 1.1(a); <u>provided, however</u>, that Buyer is not assuming, nor shall it be deemed to assume, any obligation under the Insurance Policies which does not relate solely to the Operations. Buyer is not assuming, nor shall it be deemed to have assumed, any liability or obligation of any kind or nature, including, without limitation, any liability or obligation listed on any Schedule to this Agreement, except for the liabilities and obligations assumed by Buyer in accordance with this Section 1.4 (collectively, the "<u>Assumed Liabilities</u>").

(b) To the extent not reflected on the Closing Date Schedule (hereinafter defined), weekly, bi-weekly, monthly, quarterly or annual charges to be assumed by Buyer (such as charges for utility services, insurance premiums or rental payments in respect of leased real property) shall be prorated based upon the number of days before and after the Closing Date; <u>provided, however</u>, that this sentence shall not apply to Accounts Payable. Within 30 days after the date any such charges are due, the party hereto receiving the claim of payment of such charges shall notify the other party hereto of such other party's prorated share of such charge. Such notification shall constitute a demand for payment by the sending party and shall set forth in reasonable detail the calculation of the amounts due. Amounts due shall be paid promptly.

2. <u>CLOSING; PAYMENT OF PURCHASE PRICE AT CLOSING</u>

2.1. <u>Closing Date</u>. On and subject to the conditions herein set forth, the closing of the transactions provided for in this Agreement (the "<u>Closing</u>") shall take place at the offices of Simpson Thacher & Bartlett, located at 425 Lexington Avenue, New York, New York 10017-3954, at 10 a.m., New York City time, (a) within (i) 30 days after the date of the Final Order of the Bankruptcy Court, in accordance with Section 5.2(a) or (ii) 5 days after the date that the applicable waiting period under the HSR Act (hereinafter defined) expires or is terminated pursuant to applicable law or (b) at such other time and place as shall be agreed upon by the parties hereto, but in no event later than August 10, 1996. The actual time and date of the Closing are herein referred to as the "<u>Closing Date</u>".

2.2. <u>Purchase Price and Payment; Allocation</u>. (a) In consideration for the Assets, and subject to the terms and conditions of this Agreement, Buyer shall on the Closing Date (i) assume the Assumed Liabilities as provided in Section 1.4, and (ii) transfer to the order of Seller in immediately available funds $37,300,000 (which shall constitute the "<u>Purchase Price</u>"), subject to adjustment in accordance with Section 2.3.

049797\0006\01978\9663AATJ.APA

6

ASSIGNMENT AND ASSUMPTION AGREEMENT

ASSIGNMENT AND ASSUMPTION AGREEMENT (this "Assignment and Assumption Agreement") dated as of July 19, 1996, by Keller Ladders, Inc. (formerly KUA Corp.) in favor of Keller Industries, Inc. (the "Company").

W I T N E S S E T H :

WHEREAS, Keller Ladders, Inc. has agreed to acquire from the Company, and the Company has agreed to transfer to Keller Ladders, Inc., all of the Company's assets related to its ladder operations on the terms and subject to the conditions set forth in the Asset Purchase Agreement, dated as of June 6, 1996, as amended (the "Asset Purchase Agreement"; terms used herein which are defined in the Asset Purchase Agreement shall have their defined meanings when used herein), between the Company and Keller Ladders, Inc., a Delaware corporation;

WHEREAS, under the terms of the Asset Purchase Agreement, the Company has agreed to assign its rights to Keller Ladders, Inc. under a certain Extrusion Supply Agreement, dated as of May 31, 1996 (the "Extrusion Supply Agreement"), between the Company and Fojtasek Companies, Inc., a Texas corporation (the "Supplier"); and

WHEREAS, under the terms of the Extrusion Supply Agreement, it shall be a condition to any assignment by the Company that the proposed assignee assume all of the Company's obligations thereunder.

NOW, THEREFORE, in consideration of the premises set forth herein and other good and valuable consideration, the receipt of which is hereby acknowledged, Keller Ladders, Inc. and the Company agree as follows:

1. The Company hereby assigns to Keller Ladders, Inc. all of its rights under the Extrusion Supply Agreement.

2. Keller Ladders, Inc. hereby assumes, and agrees to become responsible to the Supplier for, the performance of all of the conditions and obligations to be performed by the Company on and after the date hereof under the Extrusion Supply Agreement.

3. Subject to Section 1.3 of the Asset Purchase Agreement this Assignment and Assumption Agreement shall inure to the benefit of and be binding upon Keller Ladders, Inc. and the Company and their respective successors and assigns. Nothing in this Assignment and Assumption Agreement, expressed or implied, is intended to confer on any person other than Keller Ladders, Inc. and the Company or their respective successors and assigns,

049797\0006\01978\965TCSOD.AAA

rights, remedies, obligations or liabilities under or by reason of this Assignment and Assumption Agreement.

4. This Assignment and Assumption Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original and all of which together shall be deemed to be one and the same instrument.

5. The Company hereby represents and warrants that any consents required as a condition to the assignment and assumption provided for by this Assignment and Assumption Agreement have been duly obtained.

6. This Assignment and Assumption Agreement shall be governed by, and construed and interpreted in accordance with, the laws of the State of New York, without reference to choice of law principles thereof.

049797\0006\01978\965TC30D.AAA